[Cite as *State v. Griffith*, 2013-Ohio-256.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 97366

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## RICKY C. GRIFFITH

DEFENDANT-APPELLANT

---

### JUDGMENT:
### APPLICATION DENIED

---

Cuyahoga County Common Pleas Court
Case No. CR-549701
Application for Reopening
Motion No. 458184

**RELEASE DATE:**   January 29, 2013

**ATTORNEY FOR APPELLANT**

John P. Parker
988 East 185th Street
Cleveland, OH    44119


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Daniel T. Van
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, OH    44113

MELODY J. STEWART, A.J.:

{¶1} On August 31, 2012, the applicant, Ricky Griffith, pursuant to App.R. 26(B), applied to reopen this court's judgment in *State v. Griffith,* 8th Dist. No. 97366, 2012-Ohio-2628, in which this court affirmed Griffith's conviction for one count of felonious assault. Griffith now argues that his appellate counsel should have argued the following: (1) trial counsel was ineffective when she stated during voir dire and opening statements that Griffith and another witness would testify, and then she failed to call any witnesses; (2) the prosecutor engaged in misconduct by vouching for the credibility of the victim; (3) trial counsel was ineffective for failing to object to the prosecutor's misconduct; (4) trial counsel was ineffective for failing to request a jury instruction on the inferior degree of aggravating menacing; (5) Griffith's sentence is disproportionately harsh; and (6) cumulative errors deprived Griffith of due process. On October 31, 2012, the state of Ohio filed its brief in opposition. For the following reasons, this court denies the application to reopen.

{¶2} In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); and *State v. Reed*, 74 Ohio St.3d 534, 1996-Ohio-21, 660 N.E.2d 456.

{¶3} In *Strickland,* the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689.

{¶4} Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme

Court of Ohio reaffirmed these principles in *State v. Allen*, 77 Ohio St.3d 172, 1996-Ohio-366, 672 N.E.2d 638.

{¶5} Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies.

{¶6} The evidence at Griffith's trial showed that when the victim, Caresse Cortez, returned to her car from having been inside a post office, a pickup truck was parked next to it, and there was a new paint mark on the side of her car. While Cortez was trying to rub out the mark, Griffith returned to his pickup truck and told Cortez to "move out of the way, bitch." She replied that he had hit her car, and she was trying to rub out the mark. He stated that he did not hit her car and called her a "spic." Cortez then asked for Griffith's insurance information, which he refused to give her. He then shoved her out of the way to open his door. Cortez bounced off her car and back into his door, which caused the door to close on Griffith's finger. Griffith screamed in pain and said, "now I'm going to hit your car dumb spic bitch." He slammed his truck door against Cortez's car and dented it. Realizing that Griffith was leaving the scene, Cortez moved behind and just to the side of the truck to take a photograph of his license plate. Griffith told

her, "[g]o ahead, get a good picture, get it good, bitch." He then backed up his truck. Cortez had to move out of the way for fear of being struck. Subsequently, in discussing the matter with the police, Griffith admitted that he saw Cortez behind his vehicle and that he "gunned it to get out of there." 2012-Ohio-2628, ¶ 5 and 6.

{¶7} Griffith's first argument — that his trial counsel was ineffective because she told the jury that she would call witnesses but then did not — is unpersuasive because of res judicata and lack of prejudice. Griffith's appellate counsel made the same argument, and this court thoroughly examined the issue and concluded there was no error.

{¶8} Griffith's next arguments are that the prosecutor engaged in misconduct by vouching for Cortez's credibility and that defense counsel was ineffective for failing to object to the misconduct. During closing argument, the prosecutor reviewed the facts and stated that Cortez's testimony showed that Griffith was angry, yelling racial slurs, pushing, and slamming the door into Cortez's car. He told the jury that, "You'll make the determination if she's credible or not. I submit to you that she absolutely is. She has things to back that credibility up." (Tr. 325-326.) The prosecutor then referred to the police officer's testimony that he saw the damage to Cortez's car and to Cortez's photographs of her car as corroboration of Cortez's credibility. Griffith's counsel did not object. This is the only instance of misconduct Griffith argues.

{¶9} A prosecutor may not express a personal opinion as to the credibility of a witness. Nevertheless, the test for prosecutorial misconduct is whether the remarks were improper, and if so, whether they prejudicially affected the accused's substantial rights.

The touchstone is the fairness of the trial. In examining whether the statements rendered the trial unfair, a court should consider several factors, including: (1) whether the evidence is strong, (2) whether the statements misled the jury, (3) whether the remarks were isolated or extensive, and (4) whether the remarks were deliberate or accidental. *Slagle v. Bagley*, 457 F.3d 501 (6th Cir.2006); and *State v. Davis,* 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31.

{¶10} In the present case, the prosecutor's remark is isolated and is sandwiched between an affirmation that the jury is the determiner of credibility and an analysis of the evidence showing corroboration. It is difficult to conclude that such a remark misled the jury or resulted in prejudice. Accordingly, this court will not second-guess appellate counsel's reasonable professional judgment in declining to argue this point. Furthermore, if the direct argument on prosecutorial misconduct was unpersuasive, then the indirect argument through the lens of ineffective assistance of counsel would also be unpersuasive.

{¶11} Griffith next claims that his trial counsel was ineffective for failing to request a jury instruction on the inferior degree of aggravated menacing. However, in *State v. Griffie*, 74 Ohio St.3d 332, 1996-Ohio-71, 658 N.E.2d 764, the Supreme Court of Ohio affirmed the denial of an App.R. 26(B) application to reopen, which argued that trial counsel should have requested a jury instruction on a lesser-included offense. The court ruled that "[f]ailure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel." *Id.* at 333. This is

especially true in the present case, because trial counsel's strategy was to characterize Griffith's actions as innocent: he was just trying to leave a parking lot incident; he was not knowingly trying to harm or scare Cortez. Therefore, appellate counsel was not ineffective in rejecting this proposed assignment of error.

{¶12} Griffith also argues that his sentence was contrary to law, because it was too harsh. He did not harm Cortez, and Griffith asserts that similar offenders received lesser sentences than he received. Trial counsel probably preserved this argument by asking for probation, noting that the man who had raped Griffith and his brother as children had gotten three years, and stating that in many other felonious assault cases the victim was hurt.

{¶13} In order to prevail on a disproportionately harsh sentence argument, the appellant must clearly and convincingly establish that his sentence is inconsistent with sentences of similar defendants in similar cases. Felonious assault under R.C. 2903.11(A)(2), knowingly cause or attempt to cause physical harm by means of a deadly weapon, to wit a motor vehicle, is a second degree felony, punishable by probation or a prison sentence from two to eight years in yearly increments. The trial judge imposed a four-year sentence. In imposing the sentence, she recounted 17 criminal incidents in which Griffith was involved.[1] She also noted that she did not see remorse from Griffith and that his statement at sentencing was inconsistent with Cortez's credible testimony. The judge further indicated that Griffith's random act of violence was

---

[1] The trial judge did not always state whether these were convictions or merely arrests.

disconcerting and invoked the need to protect the public. Given the general seriousness of the case, Griffith's criminal history, the midrange of the sentence, the judge's stated need to protect the public from random acts of violence, and the clear and convincing standard to overturn the sentence, it is understandable that appellate counsel in the exercise of professional judgment declined to pursue this issue.

{¶14} Finally, Griffith argues cumulative error. Because his other assignments of error are not well-founded, this argument is necessarily unpersuasive. Griffith has not established a genuine issue as to whether he was deprived of the effective assistance of appellate counsel.

{¶15} Accordingly, this court denies the application to reopen.

_____

MELODY J. STEWART, ADMINISTRATIVE JUDGE

MARY J. BOYLE, J., and
KENNETH A. ROCCO, J., CONCUR